**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| RANDY W. WILLIAMS, § | | |
| CHAPTER 11 TRUSTEE, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| V. § | CIVIL ACTION NO. H-11-2545 | |
| § | | |
| HOUSTON PLANTS & GARDEN § | | |
| WORLD, INC., *et al.*, § | | |
| § | | |
| Defendants. § | | |

**MEMORANDUM AND ORDER**

In this Chapter 7 adversary proceeding, Randy Williams, the trustee of the estate of debtor Green Valley Growers, Inc. ("GVG"), asserts fraudulent-transfer claims under federal and state law against Compass Bank. Compass Bank has moved for summary judgment, arguing that the evidence does not support Williams's claims and that some of the claims are time-barred. (Docket Entry No. 77). Williams has cross-moved for summary judgment, arguing that the transfers were avoidable, as a matter of law. Based on a careful consideration of the record, the motions and responses, and the applicable law, both motions are granted in part and denied in part. (Docket Entry No. 87). The reasons are explained below.

**I.     Factual Background**

The Chapter 11 bankruptcy petition was filed on March 9, 2009, and converted to a Chapter 7 proceeding on April 5, 2011. Codefendant O. Wayne Massey owned GVG, a wholesale plant and tree nursery located primarily on a roughly 866-acre tract of land near Willis, Texas. GVG leased the land from OTWM, a Massey-owned entity. OTWM purchased the land using a loan from Woodforest National Bank. OTWM used GVG's lease payments to pay the Woodforest National

Bank note held against the land. On occasion, GVG would pay the Bank directly rather than pay OTWM.

In 2001, OTWM's loans were restructured and Compass Bank became the note holder, with GVG guaranteeing the note. In 2004, GVG took out a loan from Metlife to pay off OTWM's loan from Compass Bank. The loan repayment occurred in three transfers: $1,344,384, $2,000,000, and $1,293,350. Williams seeks summary judgment that these three transfers were fraudulent and that he is entitled to avoid them.[1] Compass Bank seeks summary judgment that the claims are time-barred or otherwise unsupported by the summary-judgment record.

## II.    The Legal Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." FED. R. CIV. PROC. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . ." FED. R. CIV. PROC. 56(c)(1)(A). "[T]he plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact." *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing *Celotex*, 477 U.S. at 323). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While

---

[1] GVG had some of its own valid debts to Compass Bank and Williams seeks only $2,923,175.20 from Compass Bank. (*See* Docket Entry No. 87-2 at 3).

the party moving for summary judgment must demonstrate the absence of a genuine dispute of material fact, it does not need to negate the elements of the nonmovant's case. *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).

"A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Duffie*, 600 F.3d at 371 (internal quotation marks omitted).

"When the moving party has met its Rule 56[] burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Id.* The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Id*. (internal quotation marks omitted). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). "In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party." *Duffie*, 600 F.3d at 371.

**III. Limitations**

Williams' second amended complaint asserts claims against Compass Bank under 11 U.S.C. §§ 547 and 548 and Tex. Bus. & Com. Code §§ 24.005, 24.006. (*See* Docket Entry No. 17 ¶¶ 255- 270). A trustee may avoid certain payments made to a creditor under 11 U.S.C. § 547. Avoidance is limited to payments made to a creditor within 90 days of the bankruptcy filing, or payments to a insider within one year of the bankruptcy filing. 11 U.S.C. § 547(b)(4)(A)-(B). Similarly, a trustee

3

may avoid fraudulent transfers made two years before the bankruptcy filing. *See* 11 U.S.C. § 548(a)(1). All three transfers at issue here occurred in 2004, five years before the bankruptcy petition filing. (*See* Docket Entry No. 78-1 at 41). Williams's §§ 547 and 548 claims are time-barred. Compass Banks's summary judgment motion is granted as to these claims.

Williams also asserts fraudulent-transfer claims under Tex. Bus. & Com. Code §§ 24.005 and 24.006. (Docket Entry No. 17 ¶¶ 264-270). Compass Bank moved for summary judgment on these claims as well, arguing that they are time-barred and unsupported by the summary-judgment record. (Docket Entry No. 77 at 18). Williams responded to the merits challenge, but did not address the statute of limitations. (*See* Docket Entry No. 111).

Section 24.010 provides the applicable statute of limitations:

> (a) . . . a cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:
>
> (1) under Section 24.005(a)(1) of this code, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;
>
> (2) under Section 24.005(a)(2) or 24.006(a) of this code, within four years after the transfer was made or the obligation was incurred; or
>
> (3) under Section 24.006(b) of this code, within one year after the transfer was made.

Williams seeks to avoid transfers made more than five years before the bankruptcy petition. All of Williams claims against Compass Bank under §§ 24.005(a)(2) and 24.006 are time-barred. Compass Bank's motion for summary judgment for those claims is granted.

**IV.    The § 24.005(a)(1) Claim**

Compass Bank has not argued that Williams's § 24.005(a)(1) claim is time-barred. Instead, Compass Bank argues that the claim is not supported by the record. On March 5, 2004, GVG made

three transfers to Compass Bank. The payment amounts were $1,341,484.27, $1,266,525, and $2,000,000. (*See* Docket Entry No. 78-1 at 41). Compass Bank also argues that it is entitled to the affirmative defense under § 24.009(a) because it took the transfers in good faith and for reasonably equivalent value. Williams argues that undisputed facts show that each transfer was made with the actual intent to defraud creditors, making them avoidable as a matter of law. (Docket Entry No. 111).

A trustee may avoid a transfer if it was made "with actual intent to hinder, delay, or defraud any creditor of the debtor." TEX. BUS. & COM. CODE § 24.005(a)(1). The statute provides nonexclusive factors that may be considered on determining if a transfer was made with actual intent to defraud:

>    (1) the transfer or obligation was to an insider;
>
>    (2) the debtor retained possession or control of the property transferred after the transfer;
>
>    (3) the transfer or obligation was concealed;
>
>    (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
>    (5) the transfer was of substantially all the debtor's assets;
>
>    (6) the debtor absconded;
>
>    (7) the debtor removed or concealed assets;
>
>    (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>
>    (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>
>    (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

TEX. BUS. & COM. CODE § 24.005(b). These factors are commonly called "badges of fraud." *See, e.g.*, *In re Soza*, 542 F.3d 1060, 1066 (5th Cir. 2008). "Not all, or even a majority, of the badges of fraud must exist to find actual fraud. 'Indeed, [w]hen several of these indicia of fraud are found, they can be a proper basis for an inference of fraud.'" *Id.* at 1067 (quoting *Roland v. United States*, 838 F.2d 1400, 1402–03 (5th Cir.1988)).

Williams responds that several of the badges of fraud exist here: the transfers were made to insiders; GVG was insolvent at the time of the transfers; each "transfer occurred shortly before or shortly after a substantial debt was incurred"; and GVG received no value in exchange for the transfers. (Docket Entry No. 87-3 at 1-3). Compass Bank responds that "the summary judgment evidence shows that there was no actual fraudulent intent on the part of GVG," (Docket Entry No. 109 at 12-13), and that it gave reasonably equivalent value for the transfers because "GVG merely replaced one set of obligations . . . with another obligation." (Docket Entry No. 77 at 21).

Each argument is analyzed below.

### A.  Transfers to an Insider

The statute defines an "insider" of corporate debtor as including:

> (B)(I)  a director of the debtor;
>
> (ii)  an officer of the debtor;
>
> (iii)   a person in control of the debtor;
>
> (iv) a partnership in which the debtor is a general partner;
>
> (v)  a general partner in a partnership described in Subparagraph (iv) of this paragraph; or
>
> (vi) a relative of a general partner, director, officer, or person in control of the debtor;

>> (D) an affiliate, or an insider of an affiliate as if the affiliate were the debtor; and
>
>> (E) a managing agent of the debtor.

TEX. BUS. & COM. CODE § 24.002(7)(B).  Williams argues that although the transfers were to Compass Bank, they were credited against the debts of O. Wayne Massey, Travis Massey, OTWM and Houston Plants and Garden World, which GVG had guaranteed.  (*See* Docket Entry No. 87-3 at 1-2).  But this badge of fraud is not present because the payments went to Compass Bank, who is not an insider of GVG.  "[A] bank impounding funds under a writ of garnishment would not qualify as a transferee, nor would a law firm holding its client's money in trust, because neither could freely spend the funds in its possession."  *Wohlstein v. Aliezer*, 321 S.W.3d 765, 776 (Tex. App.—Houston [14th Dist.] 2010).  Williams has not argued that Compass Bank had any restriction on the use of the funds transferred.  (*See* Docket Entry No. 87-3 at 1-2).  "[A] party is a 'transferee,' within the meaning of TUFTA, if it could freely 'invest the whole [amount] in lottery tickets or uranium stocks,' if it so desired."  *Wohlstein*, 321 S.W.3d at 776 (quoting *Matter of Coutee*, 984 F.2d 138, 141 (5th Cir.1993) (second modification in original).  The transfer here was made to Compass Bank; Williams has failed to show that the benefit that passed to the Masseys is relevant to the determination of whether Compass Bank is an insider.  (*See* Docket Entry No. 87-3 at 1-2).  The fact that the Massey insiders received a benefit from the transfers to Compass Bank might have been relevant under Williams' time barred claim under 11 U.S.C. §§ 547, 548; transfers avoided under §§ 547, 548 may be recovered from "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) *any immediate or mediate transferee of such initial transferee*."  *See* 11 U.S.C. § 550(a) (emphasis added).  Williams' has failed to show that this badge of fraud is present.  *See* TEX. BUS. & COM. CODE § 24.005(b)(1).

    **B.**    **Transfers When the Debtor was Insolvent**

Williams argues that GVG was insolvent at the time of the transfers. The statute defines "insolvency" as follows:

> (a) A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation.
>
> (b) A debtor who is generally not paying the debtor's debts as they become due is presumed to be insolvent.
>
> (c) Repealed by Acts 2013, 83rd Leg., ch. 9 (S.B. 847), § 11.
>
> (d) Assets under this section do not include property that has been transferred, concealed, or removed with intent to hinder, delay, or defraud creditors or that has been transferred in a manner making the transfer voidable under this chapter.
>
> (e) Debts under this section do not include an obligation to the extent it is secured by a valid lien on property of the debtor not included as an asset.

TEX. BUS. & COM. CODE § 24.003. As evidence of insolvency, Williams points to an August 2003 memo and a March 2004 written recommendation from Mike Peyton, a Compass Bank employee. (Docket Entry No. 87-7 at 11-14). Williams also attaches a document from Capital One Bank. (Docket Entry No. 87-7 at 35).[2] Compass Bank argues that Williams's production of documents before and after the transfers fails to "address[] the ability of GVG to pay loans as they became due on March 5, 2004." (Docket Entry No. 109 at 16). The first shows that collectively GVG, HPGW, OTWM, and Wayne and Jonell Massey were unable to meet their monthly loan payments to Compass Bank, but the memo does not indicate to what extent GVG was itself insolvent. (Docket Entry No. 87-7 at 11).

---

[2] Compass Bank objected to the Capital One material on the ground that it was not properly authenticated. (Docket Entry No. 109 at 16). The authenticating affidavit is signed by Williams's counsel and states that the document was "produced to [her] in the main bankruptcy case by counsel for Capital One Bank in response to [her] request for production served on Capital One Bank." (Docket Entry No. 87-9 at 2-3). This evidence that the document is what it claims to be satisfies Fed. R. Evid. 901(b)(1).

The March 2004 recommendation states that "[i]n 2003, a . . . loan was made to Green Valley Growers, Inc. to fund expenses associated with sales orders in the amount of $2.1MM. Customer could not meet principal reduction requirements for this loan, which was subsequently renewed and extended. This loan will be paid in full with proceeds from Metropolitan Life Insurance Company." (*Id.* at 14). This document is dated five days after the transfers in question. (*Compare id. with* Docket Entry No. 94). Compass Bank does not address this document directly; it instead points to Peyton's deposition testimony that he believed GVG was solvent when the transfers occurred. (Docket Entry No. 78-4 at 4:18-22). Peyton stated that "solvency" meant that a company "could be operated as a profitable ongoing entity." (Docket Entry No. 78-4 at 5:9-10). He then testified that he had no reason to believe that GVG had debts that exceeded its assets or that it was not generally paying debts as they became due. (*Id.* at 11-16). It is unclear that Peyton was in a position to know GVG's financial status. Moreover, his deposition is contradicted by his own writings regarding the transfers when they were made.

Compass Bank submits an opinion by its accounting expert, Saul Soloman. He stated "GVG's total equity actually increased from $1.2 million as of December 31, 2003 to $1.3 million as of December 31, 2004. (Docket Entry No. 109 at 18 (citing Docket Entry No. 109-1 at 11)). But as Compass Bank itself argued, such a comparison alone fails to "address[] the ability of GVG to pay loans as they became due" after the transfers. (Docket Entry No. 109 at 16). Compass Bank's expert report comparing GVG's total equity on December 31, 2003 and December 31, 2004 similarly fails to "address[] the ability of GVG to pay loans as they became due on March 5, 2004." (*Id.*).

9

Compass Bank also argues that GVG was "profitable" and that its sales increased during the relevant time periods. (*See* Docket Entry No. 109 at 16-18). But this does not equate to solvency when the transfers were made.

Williams also attaches a December 31, 2003 record of a different bank showing that GVG was past due in paying a $1,065,360 debt.[3] Compass Bank objects that the record is relevant to the date in question, not the date of the transfers. (Docket Entry No. 109 at 16).

To summarize, neither party produces documentation of GVG's solvency or insolvency when the transfers occurred. But neither party disputes that in 2004 GVG borrowed from Metlife in part to pay off a Compass Bank loan that had previously been in arrears. On this record, Williams has failed to show that GVG was insolvent when the transfers were made. *See* TEX. BUS. & COM. CODE § 24.005(b)(9).

### C.  A Transfer Shortly Before or Shortly Afer a Substantial Debt was Incurred

Williams next argues that "the transfer occurred shortly before or shortly after a substantial debt was incurred." (Docket Entry No. 87-3 at 2-3). "GVG incurred an additional debt of $5,550,000.00 with Metlife to pay [Compass Bank] $2,934,175.20 for debt which was not owed by GVG." (*Id.* at 2). Compass Bank does not respond to this argument. (*See* Docket Entry No. 109). This badge of fraud is present. TEX. BUS. & COM. CODE § 24.005(b)(10).

### D.  Reasonably Equivalent Value

On June 22, 2001, Compass Bank loaned O. Wayne Massey and Travis Massey $5,500,000. (Docket Entry No. 78-3 at 11-13). GVG guaranteed those loans. (*Id.* at 14-16). Williams argues that the guaranty is a fraudulent transfer but does not move for summary judgment on this issue.

---

[3] Both parties assert that the document is dated December 31, 2002; the document itself is clearly dated December 31, 2003. (*Compare* Docket Entry No. 87-3 at 2 *and* Docket Entry No. 109 at 15 *with* Docket Entry No. 87-7 at 35).

(*See* Docket Entry No. 17 ¶¶ 264-272; *see also* Docket Entry No. 87 at 2). If GVG's guaranty of OTWM's loans was a fraudulent transfer, Compass Bank may not rely on satisfaction of the debt as reasonable equivalent value for the transfers made to it. *See* TEX. BUS. & COM. CODE § 24.009(a); *see also In re MortgageAmerica Corp.*, 714 F.2d 1266, 1272–73 (5th Cir.1983).

Similar facts were presented in *Smith v. Am. Founders Fin. Corp.*, 365 B.R. 647 (S.D. Tex. 2007). *Smith* involved a corporate subsidiary that took a loan to repay a debt owed by its parent. *Id.* at 656. The court found that a transfer in the form of a guarantee. "If the debt secured by the transaction is not the debtor's own, then his giving of security will deplete his estate without bringing in a corresponding value from which his creditors can benefit, and his creditors will suffer just as they would if the debtor had simply made a gift of his property or obligation." *Id.* at 666 (citation omitted). Here, as in *Smith*, the loan guarantor received no value because the loan was used to pay debts that were not the guarantor's. This is a badge of fraud. *See* TEX. BUS. & COM. CODE § 24.005(b)(8). Compass Bank does not explain why GVG's guaranty of OTWM's loans was not a fraudulent transfer or why GVG received reasonably equivalent value for its guaranty. (Docket Entry No. 77). This factor supports a finding that the guaranty was a fraudulent transfer. TEX. BUS. & COM. CODE § 24.005(a)(1). The guaranty to Compass Bank is an avoidable fraudulent transfer. *See* TEX. BUS. & COM. CODE § 24.005(b)(8). The payments to Compass Bank to satisfy the guaranty were not made for reasonably equivalent value. TEX. BUS. & COM. CODE § 24.005(b)(8). Williams may treat these transfers "as though they had never taken place." *In re MortgageAmerica Corp.*, 714 F.2d at 1272–73.

## VI.    Conclusion

Compass Bank's motion for summary judgment is granted as to Williams's claims under 11 U.S.C. §§ 547 and 548, and Tex. Bus. & Com. Code §§ 24.005(a)(2) and 24.006. Compass's motion

is denied as to Williams's claims under Tex. Bus. & Com. Code § 24.005(a)(1). Williams's motion for summary judgment is granted only as to his claims under Tex. Bus. & Com. Code § 24.005(a)(1) for the payments used to satisfy the guaranty.

The issue of the proper amount of damages remains. Williams has settled with at least one of the codefendants. (*See* Docket Entry No. 154). Compass Bank argues that it may be entitled to a credit under that settlement to avoid double recovery. (*See* Docket Entry No. 109 at 22). Compass Bank has also argued that some of the transfers were to pay off debts unrelated to the guaranty. (*See* Docket Entry No. 77 at 7). Williams has not addressed these issues. A status conference is schedule for **April 16, 2014** at 3:00 p.m. in Courtroom 11-B to discuss remaining issues.

SIGNED on March 18, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge