IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RANDY W. WILLIAMS, | § | |
| CHAPTER 11 TRUSTEE | § | |
| Plaintiff, | § | |
| V. | § | CIVIL ACTION NO. H-11-2545 |
| | § | |
| HOUSTON PLANTS & GARDEN | § | |
| WORLD, INC., *et al*., | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This is an adversary proceeding in a Chapter 7 bankruptcy. Randy Williams, the trustee, seeks to avoid certain transfers made by the debtor, Green Valley Growers, Inc. ("GVG"). Defendant O. Wayne Massey co-owned GVG, as well as OTWM and Houston Plants and Garden World ("HPGW"). Williams has moved for summary judgment that he is entitled to avoid and recover the transfers, and to his attorney's fees. After careful consideration of the record, the motions and responses, and the applicable law, Williams's motion for summary judgment, (Docket Entry No. 86), is denied. The reasons are explained below.

**I.    Factual Background**

GVG's Chapter 11 bankruptcy proceedings began on March 9, 2009. It was converted to a Chapter 7 proceeding on April 5, 2011. GVG was a plant nursery owned that operated on land owned by OTWM. HPGW was a plant retailer. In the year before the bankruptcy began, GVG made multiple transfers to HPGW that totaled $10,986,784. GVG also transferred $441,401 to OTWM and $915,270.33 to Massey. Williams has moved for summary judgment to avoid and recover the transfers under 11 U.S.C. § 548 and the Texas Uniform Fraudulent Transfer Act,

1

("TUFTA").[1] The defendants respond that the claims fail as a matter of law and are unsupported by the summary judgment record. (Docket Entry No. 116). The arguments and responses are considered below.

## II.     The Legal Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." FED. R. CIV. PROC. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . ." FED. R. CIV. PROC. 56(c)(1)(A). "[T]he plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact." *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing *Celotex*, 477 U.S. at 323). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine dispute of material fact, it does not need to negate the elements of the nonmovant's case. *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).

---

[1] Williams also moved for summary judgment against defendant Enterprise Bank. (*See* Docket Entry No. 86 at 11-12). Enterprise Bank has settled and been dismissed from this suit. (Docket Entry No. 176).

2

"A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Duffie*, 600 F.3d at 371 (internal quotation marks omitted).

"When the moving party has met its Rule 56[] burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Id.* The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Id.* (internal quotation marks omitted). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). "In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party." *Duffie*, 600 F.3d at 371.

### III. TUFTA

Texas law permits the avoidance of transfers made "with actual intent to hinder, delay, or defraud any creditor of the debtor." Tex. Bus & Com. Code § 24.005(a)(1). A trustee may assert state law claims under the "strong arm" provision of 11 U.S.C. § 544, which "allows the trustee to step into the shoes of a creditor for the purpose of asserting causes of action under state fraudulent conveyance laws." *Matter of Zedda*, 103 F.3d 1195, 1201 (5th Cir. 1997). "The trustee's successor rights arise under federal law, but the extent of those rights depends entirely on applicable state law." *In re Moore*, 608 F.3d 253, 260 (5th Cir. 2010).

3

Williams's complaint alleges claims under TUFTA, but it does not specifically state that he is asserting those claims through § 544. (*See* Docket Entry No. 17 ¶¶ 264-272). Williams does state that his right to recovery under TUFTA will be under § 550, which states that "to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property." 11 U.S.C. § 550.

The defendants argue that Williams "did not plead section[] 544" and that they "are entitled to rely on the Trustee's pleadings." (Docket Entry No. 116 at 3). Williams argues that he is entitled to relief under TUFTA through § 550. Section 550 permits the recovery of transfers avoided under § 544. Williams clearly alleged that he is entitled to relief under § 550 and TUFTA, which is directly tied to avoidance under § 544. His pleadings are sufficient. *See Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 550 (2010).

A trustee may avoid a transfer as fraudulent if it was made "with actual intent to hinder, delay, or defraud any creditor of the debtor." TEX. BUS. & COM. CODE § 24.005(a)(1). The statute provides eleven nonexclusive factors that may be considered to determine if a transfer was made with actual intent to defraud. They are:

> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was concealed;
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) the transfer was of substantially all the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

4

>(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
>(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

TEX. BUS. & COM. CODE § 24.005(b). Williams argues that four badges of fraud are present: the transfers were concealed; "concealing the transfers is just another way of removing or concealing assets"; the transfers were made to insiders; and GVG was insolvent at all relevant times. (Docket Entry No. 86 at 8-10). The defendants argue that the § 24.005(a)(1) claim was insufficiently pleaded and that Williams's argument is unsupported by the record. (*See* Docket Entry 116 at 3).

Williams argues that "the transfers to OTWM and HPGW were 'concealed' insofar as they were not disclosed on the original sworn statement of financial affairs [submitted to the bankruptcy court pursuant to 11 U.S.C. § 521]" and "[t]he amended statement of financial affairs continued to conceal the transfer to Wayne Massey." (Docket Entry No. 86 at 8). The defendants respond that the second amended financial statement "contains hearsay" and "to the extent that [the statement] is offered as an admission of the Debtor's transactions [it] is not binding on the Defendants." (Docket Entry No. 116 at 3).

Courts have found no concealment when a transfer was negotiated in secret and had a confidentiality clause that limited what terms of the transfer could be disclosed to third parties. *In re Gen. Agents Ins. Co. of Am., Inc.*, 224 S.W.3d 806, 820 (Tex. App.—Houston [14th Dist.] 2007, no pet.) On the other hand, courts have found concealment in a real estate transaction when there was a substantial "gap of time between the original date of the deeds and the recording of the deeds," during which the grantor "continued to hold itself out as controlling the properties." *In re CRCGP*

5

*LLC*, 04-31993, 2008 WL 4107490, at *19 (Bankr. S.D. Tex. Aug. 28, 2008).

The second amended financial statement discloses the transfers that Williams seeks to avoid. (*See* Docket Entry No. 86-1 at 9, 15). On the present record, Williams has not established that, as a matter of law, the transfers were concealed. As a result, Williams has not established that "concealing the transfers is just another way of removing or concealing assets." (Docket Entry No. 86 at 8) (quotation omitted). On the present record, neither badge of fraud is present.

Williams next argues that the transfers were made to insiders. (*Id.*). The statute provides a nonexhaustive list of insiders to a corporate debtor:

> (B)(i) a director of the debtor;
> (ii) an officer of the debtor;
> (iii) a person in control of the debtor;
> (iv) a partnership in which the debtor is a general partner;
> (v) a general partner in a partnership described in Subparagraph (iv) of this paragraph; or
> (vi) a relative of a general partner, director, officer, or person in control of the debtor;
> (D) an affiliate, or an insider of an affiliate as if the affiliate were the debtor; and
> (E) a managing agent of the debtor.

TEX. BUS. & COM. CODE § 24.002(7)(B).

"The cases which have considered whether insider status exists generally have focused on two factors in making that determination: (1) the closeness of the relationship between the transferee and the debtor; and (2) whether the transactions between the transferee and the debtor were conducted at arm's length." *Matter of Holloway*, 955 F.2d 1008, 1011 (5th Cir. 1992). Massey is clearly an insider. Massey coowns OTWM and HPGW and both are listed as insiders on the amended statement of financial affairs. (Docket Entry No. 86-1 at 9). The defendants respond that the second amended financial statement "contains hearsay" and "to the extent that [the statement] is offered as an admission of the Debtor's transactions [it] is not binding on the Defendants."

(Docket Entry No. 116 at 3). The document in question was signed by Massey; it is not hearsay as to him. *See* FED. R. EVID. 801(d). The defendants do not identify which portions of the statement of financial affairs contain hearsay within hearsay. Their objection does not affect Massey's insider status.

The defendants have not argued that they did not have a close relationship to GVG or that the transactions at issue were at arm's length. (*See* Docket Entry No. 116). Massey, OTWM, and HPGW are all insiders to GVG. This badge of fraud is present.

Williams's last argument is that GVG was insolvent when the transfers were made because it was not paying its debts as they became due. (*Id.* at 13). The statute defines "insolvency"as follows:

> (a) A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation.
> (b) A debtor who is generally not paying the debtor's debts as they become due is presumed to be insolvent.
> (c) Repealed by Acts 2013, 83rd Leg., ch. 9 (S.B. 847), § 11.
> (d) Assets under this section do not include property that has been transferred, concealed, or removed with intent to hinder, delay, or defraud creditors or that has been transferred in a manner making the transfer voidable under this chapter.
> (e) Debts under this section do not include an obligation to the extent it is secured by a valid lien on property of the debtor not included as an asset.

TEX. BUS. & COM. CODE § 24.003.

Williams points to parts of GVG's financial statements, to two proof of claims from the underlying bankruptcy, and to a February 2008 collections report from KC Crushed. (Docket Entry No. 86 at 10). One of the proofs of claim, filed in March 2009, shows that GVG had unpaid invoices after January 2007 until the bankruptcy petition filing date. (Docket Entry No. 86-3 at 17-19). This covers the period when the payments were made to Smith. (*See* Docket Entry No. 17 ¶ 238). The

second proof of claim shows that in October 2008, GVG executed a promissory note to a vendor for $199,112.36. (Docket Entry No. 86-3 at 2). Th claim states that this amount was "then due and owing from the Debtor to the Claimant" and that a "series of payments were made on the Note," but the payments stopped when GVG filed for bankruptcy. (*Id.*). Williams also cites two of GVG's financial statements that showing it paid $97,723 in 2006 and $189,761 in 2007 in bank overdraft fees. (Docket Entry No. 86-2 at 50). Williams finally cites a February 2008 "Collections Report" from KC Crushed showing that GVG had invoices remain unpaid from 38 to 489 days. (*Id.* at 49).

The record shows that during the relevant periods, GVG was behind on payments to some of its creditors, including KC Crushed. The record also shows that GVG refinanced some debt that was due and incurred substantial overdraft fees in the year the challenged transfers began.

The defendants argue that GVG "was generally paying its bills until Capital One Bank stopped funding its line of credit . . . shortly before [GVG] filed for bankruptcy" and that some of the documents on which Williams relies contain hearsay. (Docket Entry No. 116 at 3, 6). Even assuming that the documents are admissible evidence, Williams has not established on the present record that, as a matter of law, GVG was insolvent when the transfers were made.

Various factors are relevant to determine whether a debtor's payment of its debts shows insolvency. *See, e.g.*, *In re Arriola Energy Corp.,* 74 B.R. 784, 790 (S.D. Tex. 1987). "Among them are the number and amount of the unpaid debts in relation to the size of the debtor's operation; the age and number of unpaid debts; the total amount of indebtedness; and the number of unpaid creditors" *Id.* (citations omitted). Williams does not address these factors. As a result, this court cannot find, on the present record, that GVG was not generally paying its debts as they became due. This badge of fraud is not present, and Williams is not entitled to partial summary judgment on this

8

ground.

Williams has shown that a single badge of fraud is present—that the transfers were made to insiders. "As a matter of law, a finding of fraudulent intent cannot properly be inferred from the existence of just one 'badge of fraud.'" *In re SMTC Mfg. of Texas*, 421 B.R. 251, 300 (Bankr. W.D. Tex. 2009) (collecting cases). Williams's motion for partial summary judgment under Tex. Bus. & Com. Code § 25.005 is denied. Williams's related claim for attorney's fees under Tex. Bus. & Com. Code § 25.013 is also denied.

## IV.     11 U.S.C. § 548

Williams moves for summary judgment under 11 U.S.C. § 548(a)(1)(A), which states that a trustee may recover transfers made within two years of the filing of a bankruptcy petition if the debtor "made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfers was made or such obligation was incurred, indebted." 11 U.S.C. § 548(a)(1)(A). To determine actual intent, courts have identified several "badges of fraud":

>    (1) the lack or inadequacy of consideration;
>    (2) the family, friendship or close associate relationship between the parties;
>    (3) the retention of possession, benefit or use of the property in question;
>    (4) the financial condition of the party sought to be charged both before and after the transaction in question;
>    (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
>    (6) the general chronology of events and transactions under inquiry.

*In re Soza*, 542 F.3d 1060, 1067 (5th Cir. 2008). "Not all, or even a majority, of the "badges of fraud" must exist to find actual fraud. Indeed, "[w]hen several of these indicia of fraud are found, they can be a proper basis for an inference of fraud." *Id.* (quoting *Roland v. United States*, 838 F.2d

9

1400, 1403 (5th Cir.1988)).

Williams argues that several badges of fraud exist: "there is a 'family, friendship or close associate relationship between the parties'"; that the general chronology of the transfers "is highly irregular" and the dollar amount of the checks is "highly suspicious"; and GVG was insolvent during the relevant period. (Docket Entry No. 86 at 8-10). Two of these badges were discussed above: Williams has shown that Massey, OTWM and HPGW were insiders but has not shown that GVG was insolvent during the relevant period.

Williams argues that the timing and amount of the checks each presents a badge of fraud because the checks were written "not on a regular monthly basis . . . but within days of each other" and "the even-numbered high-dollar amounts of the checks are highly suspicious." (Docket Entry No. 86 at 9-10). The defendants respond that Williams relies in part on duplicate checks, that Williams's "suspicions" do not establish badges of fraud, and that the checks furthered legitimate business concerns. (Docket Entry No. 116 at 3, 5-7). Williams does not cite to specific record evidence to support his arguments. (*See* Docket Entry No. 86 at 9-10). On this record, Williams has not shown that either badge of fraud is present.

Williams has shown a badge of fraud—the transfers were made to insiders. But a single badge is generally insufficient to show actual intent. *See United States v. Fernon*, 640 F.2d 609, 613 (5th Cir. 1981) ("While a badge of fraud standing alone may amount to little more than a suspicious circumstance, insufficient in itself to constitute fraud per se, several of them when considered together may afford a basis from which its existence is properly inferable.") (quotation omitted); *see also In re Texas Rangers Baseball Partners*, 498 B.R. 679, 712 (Bankr. N.D. Tex. 2013); *In re Gulf Fleet Holdings, Inc.,* 491 B.R. 747, 767 (Bankr. W.D. La. 2013). On the present record, Williams

10

has failed to show that, as a matter of law, the transfers were made with the actual intent to hinder, delay, or defraud creditors.  His motion for partial summary judgment to avoid and recover the transfers under § 548(a)(1)(a) is denied.

## VII.     Conclusion

Williams has not shown, as a matter of law, that he is entitled to avoid and recover the transfers and to attorney's fees under 11 U.S.C. § 548 and Tex. Bus. & Com. Code § 25.005.  His motion for partial summary judgment, (Docket Entry No. 86), is denied.  A status conference is set for **April 16, 2014** at 3:00 p.m. in Courtroom 11-B, United States Courthouse, 515 Rusk, Houston, Texas.

SIGNED on March 31, 2014, at Houston, Texas.

*(signature)*
Lee H. Rosenthal
United States District Judge