**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| RANDY W. WILLIAMS, | § | |
| CHAPTER 11 TRUSTEE | § | |
| Plaintiff, | § | |
| V. | § | CIVIL ACTION NO. H-11-2545 |
| | § | |
| HOUSTON PLANTS & GARDEN | § | |
| WORLD, INC., *et al*., | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This is an adversary proceeding in a Chapter 7 bankruptcy.  Randy Williams, the trustee,

seeks to avoid certain transfers the debtor, Green Valley Growers, Inc. ("GVG"), made to  Hurley

Ray Smith and KC Crushed Concrete.  Smith is the owner and president of KC Crushed.  Williams

seeks to avoid the transfers under 11 U.S.C. §§ 547 and 548 and the Texas Uniform Fraudulent

Transfers Act ("TUFTA"), and to have certain claims disallowed.  Smith and KC Crushed move for

summary judgment that they are not liable for Williams's claims.  (Docket Entry No. 74).  Williams

moves for partial summary judgment that he is entitled to the relief he seeks against Smith.  (Docket

Entry No. 82).   After careful consideration of the record, the motions and responses, and the

applicable law, Williams's motion for partial summary judgment, (Docket Entry No. 82), is denied

and Smith and KC Crushed's motion for summary judgment, (Docket Entry No. 74), is granted in

part and denied in part.  The claims that remain are to avoid the $80,000 transfer on the $400,000

Note and to disallow proofs of claim 64-1 and 64-2.

The reasons for these rulings are explained below.  A status conference is set for **April 16,**

**2014**, at 3:00 p.m. in Courtroom 11-B.

1

I.       **Factual Background**

GVG is the debtor a Chapter 11 bankruptcy petition filed on March 9, 2009 and converted to a Chapter 7 proceeding on April 5, 2011.  GVG was a plant nursery owned by O. Wayne Massey and others.  GVG operated on land owned by OTWM, a partnership also coowned by Massey.  From 2001 until the bankruptcy, GVG and KC Crushed had a business relationship.  KC Crushed provided GVG raw materials and construction services, "which included the creation of ditches and irrigation ponds, building of rock roads, beds and loading docks, as well as the work on some of the greenhouses located on the property operated by GVG."  (Docket Entry No. 74 at 6).  In 2004, GVG took out a loan and paid $396,527.10 of the proceeds to KC Crushed.  On February 27, 2007, Massey and Smith executed a Promissory Note that stated: "I, Wayne Massey promise to repay Ray Smith for a Promissory Note in the amount of $400,000.00 with Interest."  (Docket Entry No. 82-1 at 12).  The defendants contend that the Note "incorrectly listed Smith as the lender and Wayne Massey as the borrower."  (Docket Entry No. 74 at 8).  Smith stated in an affidavit that the Note was in fact between KC Crushed and GVG, not himself and Massey.  (Docket Entry No. 74-3 at 2-3).  Smith stated: "I did not draft or prepare the Promissory Note.  I did not review the Promissory Note.  When the Promissory Note was presented to me, I did not read it and simply signed the note as written . . . I was signing on behalf of KC Crushed Concrete, not myself individually.  Wayne Massey and I agreed that [GVG] would repay KC Crushed Concrete with periodic $5,000 loan repayments, as initial interest only payments."  (*Id.* ¶¶ 10-11).  From April 2007 until December 2008, GVG paid Smith—not KC Crushed—$80,000 towards the Note, in $5,000 monthly installments.

Smith and KC Crushed have moved for summary judgment that they are not liable to

Williams under 11 U.S.C. §§ 547 and 548 or TUFTA.  (Docket Entry No. 74).  Williams responded, (Docket Entry No. 110), and Smith and KC Crushed replied, (Docket Entry No. 143).

During the bankruptcy proceedings, two claims of $505,000 each were filed by "Ray Smith a/k/a KC Crushed Concrete, Inc."  (Docket Entry No. 82-1 at 7, 13).  Both claims listed "Promissory Note - Lien" as the basis.  (*Id.*).  Williams has moved for partial summary judgment that the two claims should be disallowed and that he is entitled to recover the $80,000 in Note payments from Smith, along with statutory damages and attorney's fees.  (Docket Entry 82 at 18).  Smith and KC Crushed responded.  (Docket Entry Nos. 101, 102, 103, 104).

## II.     The Legal Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." FED. R. CIV. PROC. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . ." FED. R. CIV. PROC. 56(c)(1)(A).  "[T]he plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact." *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing *Celotex*, 477 U.S. at 323).  If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  While

the party moving for summary judgment must demonstrate the absence of a genuine dispute of material fact, it does not need to negate the elements of the nonmovant's case. *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).

"A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Duffie*, 600 F.3d at 371 (internal quotation marks omitted).

"When the moving party has met its Rule 56[] burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Id.* The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Id.* (internal quotation marks omitted). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). "In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party." *Duffie*, 600 F.3d at 371.

## III. Williams's Motion for Partial Summary Judgment

### A. The $80,000 Transfers

Williams has moved for partial summary judgment that he is entitled to avoid and recover the $80,000 paid to Smith under 11 U.S.C. § 548 and Tex. Bus & Com. Code § 24.005. (Docket Entry No. 82 at 6-7). A threshold issue is whether Massey—not GVG—was the borrower and

whether Smith—not KC Crushed—was the lender on the 2007 Promissory Note.  (*See, e.g.*, Docket Entry No. 82 at 11, 12, 15).

The Note plainly stated that Massey was the borrower and Smith was the lender.  (*See* Docket Entry No. 104-3 at 6).  Smith and KC Crushed argue that the loan was to GVG as the borrower from KC Crushed as the lender.  (*See* Docket Entry No. 74 at 8).  They cite the affidavits of Smith and Massey to support this argument.  (Docket Entry Nos. 74-3, 74-4).  But GVG wrote the $5,000 monthly checks to Smith, not to KC Crushed.  (*E.g.*, Docket Entry No. 82-1 at 20).  Smith's receipt of the payments is consistent with the Note terms.

Smith's argument that he did not read the Note before he signed is unavailing.  "Absent fraud, one is presumed to know the contents of a document and has an obligation to protect themselves by reading documents prior to signing."  *See Nautical Landings Marina, Inc. v. First Nat. Bank in Port Lavaca*, 791 S.W.2d 293, 298 (Tex. App.—Corpus Christi 1990, writ denied) (citing *G–W–L, Inc. v. Robichaux*, 643 S.W.2d 392, 393 (Tex.1982)).

The parties' subjective beliefs are also unavailing to contradict the clear Note terms.  "[A party's] subjective belief of the purpose of [a contract] can not contradict the intent of the parties expressed within the four corners of the document."  *Id.* (citation omitted).  "The rights and obligations of the parties to [promissory note] shall be determined solely from the written loan agreement, and any prior oral agreements between the parties are superseded by and merged into the loan agreement."  TEX. BUS. & COM. CODE § 26.02©.  Smith has presented no argument why the statute does not control.  (*See* Docket Entry No. 74 at 8).  The Note stated that the $400,000 debt ran from Massey to Smith, not from GVG to KC Crushed.  (*See* Docket Entry No. 104-3 at 6).

Smith argues that even if GVG was not liable on the Note, "the funds were transferred to

GVG . . . [t]hus GVG received *at least* $400,000 in value from the loan made by KC Crushed."
(Docket Entry No. 101 at 18) (emphasis in original).  Smith stated in his affidavit that the $400,000
loan proceeds were transferred from a KC Crushed bank account to a GVG bank account.  (Docket
Entry No. 74-3 ¶ 13).  Williams argues that at most, GVG's receipt of the funds from Massey would
be a capital contribution to GVG from Massey that did not give rise to a debt owed by GVG.
(Docket Entry No. 82 at 12).

Smith also stated that a separate security agreement was prepared at the same time as the
Promissory Note, listing GVG and KC Crushed as the parties.  (Docket Entry No. 74-3 ¶ 23).  Smith
acknowledges that he "is unable to locate a copy of the security agreement."  (*Id.*).  Smith's
argument about the security agreement is unavailing.  A security agreement must be in writing.  TEX.
BUS. & COM. CODE § 26.02(b).  "[I]n proving the terms of a writing, where such terms are material,
the original writing must be produced, unless it is shown to be unavailable for some reason other
than the serious fault of the proponent."  *United States v. Duffy*, 454 F.2d 809, 811 (5th Cir. 1972)
(citation omitted).

Smith has failed to prove that, as a matter of law, the $400,000 Note and the $80,000 in Note
payments were paid by GVG to KC Crushed, as opposed to paid by Massey to Smith.

### 1.    11 U.S.C. 548(a)(1)

A trustee may recover transfers made within two years of the filing of a bankruptcy petition
if the debtor "made such transfer or incurred such obligation with actual intent to hinder, delay, or
defraud any entity to which the debtor was or became, on or after the date that such transfers was
made or such obligation was incurred, indebted." 11 U.S.C. § 548(a)(1)(A).  To determine actual
intent, courts have identified several "badges of fraud." They include:

(1) the lack or inadequacy of consideration;
(2) the family, friendship or close associate relationship between the parties;
(3) the retention of possession, benefit or use of the property in question;
(4) the financial condition of the party sought to be charged both before and after the transaction in question;
(5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
(6) the general chronology of events and transactions under inquiry.

*In re Soza*, 542 F.3d 1060, 1067 (5th Cir. 2008). "Not all, or even a majority, of the "badges of fraud" must exist to find actual fraud. Indeed, '[w]hen several of these indicia of fraud are found, they can be a proper basis for an inference of fraud.'" *Id.* (quoting *Roland v. United States*, 838 F.2d 1400, 1403 (5th Cir.1988)).

Williams argues that the $80,000 in transfers present several badges of fraud. First, "there is a 'family, friendship or close relationship between the parties.'" (Docket Entry No. 82 at 11) (quoting the statute). Second, "Wayne Massey retained possession, benefit or use of the property in question." (*Id.* at 12) (quotation omitted). Finally, GVG received no value for the transfers. (*Id.*). Smith responds to each argument. (Docket Entry No. 101 at 11-22).

Williams argues that "Wayne Massey, the owner of GVG, was the beneficiary of the transfers to Ray Smith insofar as he was the actual obligor on the Massey note." (Docket Entry No. 82 at 11). Williams notes that "Ray Smith is a significant banking customer of the bank owned by Massey," (*Id.*), that "Massey and Smith are close social friends and have been so for a long time," and that "Smith and KC are among the parties so intertwined with Mr. Massey and his chain of related entities and people that they should be considered insiders for the purposes of the Trustee's avoidance actions." (Docket Entry No. 110 at 4, (citing Docket Entry No. 110-1 at 15-16)). But GVG is the bankruptcy debtor that allegedly made the disputed transfers; the relevant relationship

for this badge of fraud is that of GVG to Smith and KC Crushed.  *See In re Soza*, 542 F.3d at 1067.

Williams has not shown that Massey's relationship to Smith and KC presents a badge of fraud.

"Th[e] retention of the use of transferred property very strongly indicates a fraudulent motive

underlying the transfer."  *Matter of Chastant*, 873 F.2d 89, 91 (5th Cir. 1989) (citation omitted).

Williams argues that "Massey retained possession, benefit or use of the property in question . . .

insofar as the $80,000 in transfers to Ray Smith reduced his indebtedness." (Docket Entry No. 82

at 12) (quotation omitted).  Smith responds that "[t]here is no evidence of retention by GVG of

'possession, benefit, or use of . . . the $80,000 payments." (Docket Entry No. 101 at 21).  Williams

has not cited or otherwise identified the specific record evidence showing that GVG retained

possession, benefit, or use of the money transferred.  Rule 56(c)(1)(A) and (B) require Williams to

cite "to particular parts of materials in the record" supporting the assertions that facts cannot be

genuinely disputed or make a "showing . . . that an adverse party cannot produce admissible

evidence to support the fact."  FED. R. CIV. P. 56(c)(1)(A), (B).

Williams's argument for the final badge of fraud under § 548 is that GVG received no value

for the money transferred because Massey—not GVG—was liable as the obligor on the Note.

(Docket Entry No. 82 at 12).  Smith responds that "[a] debtor may also receive 'reasonably

equivalent value' when the debtor's payment of a third-party's debt reduces the debtor's liabilities."

(Docket Entry No. 101 at 8).  Smith argues that GVG was liable to him on the Note, or to "Massey

on the $400,000 loan which was carried on their books."  (*Id.* at 9).  But GVG was not the obligor

on the Note, which was between Massey and Smith, and Smith does not cite to specific record

evidence showing that GVG was liable to Massey for the $400,000 transfer to it.  (*See id.*).  Smith's

argument that GVG "receive[d] 'reasonably equivalent value' for the payments to Smith/KC

8

Crushed as it reduced their liability – to either Massey or KC Crushed" fails, because, on the present record, GVG was not the obligor under the Note.  (*Id.*).  As a result, on this record, the court cannot find that, as a matter of law, GVG received value in exchange for the $80,000 transfers made to Smith.  This badge of fraud is present.  But a single badge is generally insufficient to show actual intent.  *See United States v. Fernon*, 640 F.2d 609, 613 (5th Cir. 1981) ("While a badge of fraud standing alone may amount to little more than a suspicious circumstance, insufficient in itself to constitute fraud per se, several of them when considered together may afford a basis from which its existence is properly inferable.") (quotation omitted)*; see also In re Texas Rangers Baseball Partners*, 498 B.R. 679, 712 (Bankr. N.D. Tex. 2013); *In re Gulf Fleet Holdings, Inc.,* 491 B.R. 747, 767 (Bankr. W.D. La. 2013).

On the present record, Williams has failed to show that, as a matter of law, the $80,000 was transferred with the actual intent to hinder, delay, or defraud creditors.  His motion for partial summary judgment to avoid and recover the $80,000 transfers under § 548(a)(1) is denied.

### 2.      TUFTA

Williams also seeks relief under TUFTA.  (*See* Docket Entry No. 17 ¶¶ 264-272).  The statute provides that a trustee may avoid a transfer as fraudulent if it was made "with actual intent to hinder, delay, or defraud any creditor of the debtor."  Tex. Bus. & Com. Code § 24.005(a)(1).  The statute provides eleven nonexclusive factors that may be considered to determine if a transfer was made with actual intent to defraud.  They are:

> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was concealed;
> (4) before the transfer was made or obligation was incurred, the debtor had been

sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

TEX. BUS. & COM. CODE § 24.005(b).  Several of these factors overlap with the badges of fraud for a § 548 claim.

As discussed above, the present record does not establish that GVG received reasonably equivalent value for the $80,000 in transfers to Smith.  Williams argues that these additional badges of fraud are present.  He asserts that the transfers were concealed; the transfers were made to conceal or remove GVG's assets; the transfers were for the benefit of an insider; and  the transfers were made when GVG was insolvent.  (Docket Entry No. 82 at 11-13).

Williams argues that the transfers were concealed because "they were not disclosed on either the original sworn statement of financial affairs, or the amended version" and "concealing the transfers is just another way of removing or concealing assets."  (*Id.* at 11) (quotation omitted).  Smith responds that Williams has the burden to "establish *as a matter of law* that these payments were made with the *intent to conceal*." (Docket Entry No. 101 at 16) (first emphasis in original).  "In determining actual intent under Subsection (a)(1) of this section, consideration may be given, among other factors, to whether . . . the transfers or obligations were concealed." TEX. BUS. & COM. CODE § 24.005(b).  The statute allows a factfinder to consider whether a transfer was concealed to

determine whether there was "actual intent to hinder, delay, or defraud any creditor of the debtor." *See* TEX. BUS. & COM. CODE § 24.005.  Smith argues that the payments were not concealed because they "were made on company checks and are listed in the GVG bank account records."  (Docket Entry No. 101 at 17).  Williams has not pointed to specific record evidence showing that the transfers were concealed or that GVG concealed assets.  These badges of fraud are not present.

Williams argues that "the transfers were for the benefit of an insider."  (Docket Entry No. 82 at 11).  If a "transfer or obligation was to an insider," that is a badge of fraud.  TEX. BUS. & COM. CODE § 24.005(b).  The statute provides a nonexhaustive list of insiders to a corporate debtor:

> (B)(I) a director of the debtor;
> (ii) an officer of the debtor;
> (iii) a person in control of the debtor;
> (iv) a partnership in which the debtor is a general partner;
> (v) a general partner in a partnership described in Subparagraph (iv) of this paragraph; or
> (vi) a relative of a general partner, director, officer, or person in control of the debtor;
> (D) an affiliate, or an insider of an affiliate as if the affiliate were the debtor; and
> (E) a managing agent of the debtor.

TEX. BUS. & COM. CODE § 24.002(7)(B).

"The cases which have considered whether insider status exists generally have focused on two factors in making that determination: (1) the closeness of the relationship between the transferee and the debtor; and (2) whether the transactions between the transferee and the debtor were conducted at arm's length."  *Matter of Holloway*, 955 F.2d 1008, 1011 (5th Cir. 1992).  Under the Note, GVG is the obligor, not Massey.  Although Williams discusses the general relationship between Smith and Massey, he does not address whether the transactions at issue were at arm's length.  (*See* Docket Entry No. 82 at 11).  This court cannot find that this badge of fraud is present on the present record.

Williams's last argument is that GVG was insolvent when the transfers were made because it was not paying its debts as they became due.  (*Id.* at 13).  The statute defines "insolvency," as follows:

> (a) A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation.
> (b) A debtor who is generally not paying the debtor's debts as they become due is presumed to be insolvent.
> © Repealed by Acts 2013, 83rd Leg., ch. 9 (S.B. 847), § 11.
> (d) Assets under this section do not include property that has been transferred, concealed, or removed with intent to hinder, delay, or defraud creditors or that has been transferred in a manner making the transfer voidable under this chapter.
> (e) Debts under this section do not include an obligation to the extent it is secured by a valid lien on property of the debtor not included as an asset.

TEX. BUS. & COM. CODE § 24.003.

Williams points to parts of GVG's financial statements, to two proof of claims from the underlying bankruptcy, and to a February 2008 collections report from KC Crushed.  (Docket Entry No. 82 at 13).  One of the proofs of claim, filed in March 2009, shows that GVG had unpaid invoices after January 2007 until the bankruptcy petition filing date.  (Docket Entry No. 82-2 at 61-63).  This covers the period of the challenged payments to Smith.  (*See* Docket Entry No. 17 ¶ 238).  The second proof of claim shows that in October 2008, GVG executed a promissory note to a vendor for $199,112.36.  (Docket Entry No. 82-2 at 46).  The claim states that this amount was "then due and owing from the Debtor to the Claimant."  (*Id*).  This second proof of claim states that a "series of payments were made on the Note," but the payments stopped when GVG filed for bankruptcy.  (*Id.*).  Williams also cites one of GVG's financial statements showing that it paid $97,723 in 2006 and $189,761 in 2007 in bank overdraft fees.  (*Id.* at 44).  Finally, Williams notes a February 2008 "Collections Report" from KC Crushed showing that GVG had outstanding invoices that had been

12

unpaid from 38 to 489 days.  (*Id.* at 43).

Smith argues that the evidence is insufficient as a matter of law to show insolvency because "it does not establish whatsoever the fair value of the GVG property.  There is no appraisal of the equipment or inventory."  (Docket Entry No. 101 at 12).  Determining insolvency using the fair valuation of the debtor's assets is appropriate under Tex. Bus. & Com. Code § 24.003(a), but Smith fails to acknowledge that Williams is arguing insolvency under § 24.003(b).

Williams's response to Smith and KC Crushed's summary-judgment motion includes an expert report by Miles Harper, a certified public accountant.  (Docket Entry 110-2 at 42-48).  Williams did not cite or refer to this report in his own motion for partial summary judgment.  (*See* Docket Entry No. 82).  In their reply to Williams's response, Smith and KC Crushed objected to Harper's report because it "fails to demonstrate that Mr. Harper is qualified to value the assets of [GVG] or that he used the proper standard for determining insolvency."  (Docket Entry No. 143 at 11).  Williams did not respond to the objection.  The report was not considered in ruling on Williams's motion.

Documents in the record show that during the relevant period, GVG was behind on payments to some of its creditors, including KC Crushed.  The record also shows that GVG refinanced some debt  that was due and incurred substantial overdraft fees in the year that the challenged transfers began.  Smith argues that "[t]hese documents do not establish that GVG was not paying its debts as they became due in 2007 and 2008.  GVG was operating in positive cash flow and making payments on its loans."  (Docket Entry No. 101 at 21-22).  These factors—positive cash flow and payment of loans—do not equate to solvency.  Smith cites to an affidavit from Massey to support his argument.

13

(*See id.* at 12).[1]  Massey stated that GVG "was generally paying debts as they became due in 2007 and 2008." (Docket Entry No. 102-1 at 4).  Neither Massey's affidavit nor Smith's motion and brief cite specific record evidence to substantiate Massey's assertion and Smith's argument. There is record evidence that GVG was not paying some debts as they became due during the relevant period.

At the same time, various factors are relevant to determine whether a debtor's payment of its debts shows insolvency.  *See, e.g.*, *In re Aerially Energy Corp.,*  74 B.R. 784, 790 (S.D. Tex. 1987).  "Among them are the number and amount of the unpaid debts in relation to the size of the debtor's operation; the age and number of unpaid debts; the total amount of indebtedness; and the number of unpaid creditors" *Id.* (citations omitted).  Williams does not address these factors.  As a result, this court cannot find, on the present record, that GVG was not generally paying its debts as they became due.  This badge of fraud is not present, and Williams is not entitled to partial summary judgment on this ground.

In summary, Williams seeks relief under both 11 U.S.C. § 548 and Tex. Bus. & Com. Code § 24.005(a)(1)(A).  Williams has shown that no genuine issue of material facts exists as to whether GVG received value in return for the transfers to Smith—GVG did not.  But Williams has failed to show other badges of fraud.  Williams has not shown that, as a matter of law, the $80,000 transferred to Smith were avoidable fraudulent transfers.  Williams's motion for partial summary judgment on his claims to avoid the $80,000 transfers under 11 U.S.C. § 548 and Tex. Bus. & Com. Code § 24.005 are denied.

### B.    Disallowing the Proofs of Claims

---

[1]  Smith also cites to testimony of Jim Hessler, a former employee of GVG.  (*See* Docket Entry No. 101 at 12). The cited testimony does not support Smith's argument because Hessler does not give his opinion as to whether the sale of the inventory would satisfy all creditor's claims.  (*See* Docket Entry No. 103-1 at 13:12-25, 14:1-17).

Williams moves for partial summary judgment that "for the maximum statutory damages allowed by law [] pursuant to 18 U.S.C. § 152 and 3571." (Docket Entry No. 82 at 2). The statutes Williams cites are criminal statutes. *See* 18 U.S.C. §§ 152, 3571. It is unclear how they support the relief Williams seeks. *See* 18 U.S.C. 3571 ("A defendant who has been found guilty of an offense may be sentenced to pay a fine."). To the extent Williams seeks relief under these statutes, his request is denied.

Williams also moves for partial summary judgment on claims under Tex. Civ. Prac. & Rem. Code § 12.002 and Tex. Bus. & Com. Code § 9.5185. (Docket Entry No. 82 at 2). Neither claim is included in his second amended complaint. (*See* Docket Entry No. 17). The defendants noted this defect in their response. (*See* Docket Entry No. 101 at 26). Williams's motion for partial summary judgment on these claims is denied.

Williams also moves for partial summary judgment "[t]hat proofs of claim number 64-1 and 64-2 be disallowed in their entirety pursuant to 11 U.S.C. § 502(b)(1) and 502(d)." (Docket Entry No. 82 at 2). "[I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that--(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b). A claim will also be disallowed to the extent it is avoidable. *Id.* § 502(d). Williams does not provide specific cites to record evidence supporting his § 502 claim. (*See* Docket Entry No. 82 at 2). Williams's summary-judgment motion to disallow claims number 64-1 and 64-2 is denied.

15

Williams seeks attorney's fees under Tex. Bus. & Com. Code § 24.013. Because the motion for summary judgment has been denied, his fees claim also fails.

## IV.    The Summary Judgment Motion Filed by Smith and KC Crushed

Smith and KC Crushed moved for summary judgment that as a matter of law, they are not liable for the Williams's claims requiring proof of "insider" status, seeking recovery of payments by GVG to KC Crushed in 2004, or seeking recovery of the $80,000 payments to Smith on the $400,000 loan.  (Docket Entry No. 74 at 3).

### a.    Insider Status

Smith and KC Crushed move for summary judgment on all of Williams's § 547 claims and "a portion of the claims under § 548."  (Docket Entry No. 74 at 12).  Smith and KC Crushed argue that those claims require a finding of insider status that the record does not support.  (*Id.*).  Williams responds that Smith and KC Crushed are insiders, and, even if they are not, only one theory of recovery under § 547 and § 548 requires the transferee to be an insider of the debtor. 11 U.S.C. §§ 547(b)(4)(B), 548(a)(1)(B)(iv).

Neither Smith nor KC Crushed fits under the statutory categories of insiders of a corporate debtor. *See* 11 U.S.C. § 101(31)(b).  One of the critical factors is whether the transactions between the transferee and the debtor were conducted at arm's length. *Matter of Holloway*, 955 F.2d at 1011. An arm's length transaction is one between two unrelated and unaffiliated parties or between two parties, however closely related, conducted as if the parties were strangers, so that no conflict of interest arises. BLACK'S LAW DICTIONARY 1535 (8th ed. 2004).  Smith and KC argue that the transactions at issue were at arm's length.  (Docket Entry No. 74 at 12).  Williams responds that the "relationships between Massey, GVG, Smith KC and Enterprise Bank indicate that Smith and KC

were more than simple vendors to Massey and GVG, but instead enjoyed a close relationship that was anything but 'arms length.'"  (Docket Entry No. 110 at 6).  Williams does not cite record evidence showing that the transactions were not at arm's length beyond describing the relationships among Massey, Smith, KC Crushed, and Enterprise Bank.  (*See* Docket Entry No. 110 at 4-6).  Smith and KC Crushed reply that the inquiry must be focused on their relationship to GVG, not to Massey or Enterprise Bank.  (Docket Entry No. 143 at 2-4).  There is evidence in the record that GVG had a business relationship with Smith and KC Crushed, and Williams does not cite specific record evidence showing that Smith and KC Crushed are insiders as to GVG.  On the present record, this court cannot find that Smith and K are insiders as to GVG.

### B.    The $400,000 Loan and the $80,000 in Transfers

#### 1.    11 U.S.C. § 548

Smith and KC Crushed have moved for summary judgment that Williams is not entitled to avoid the $80,000 in transfers under 11 U.S.C. § 548.  (*See* Docket Entry No. 74 at 13).  Williams opposes their summary judgment motion but has not cross-moved for summary judgment.  (*See* Docket Entry No. 110 at 4-13; *see also* Docket Entry No. 82 at 7 (moving for partial summary judgment on § 548(a)(1)(A) but not § 548(a)(1)(B)(ii)(IV)).

Smith and KC Crushed argue that while they are not insiders of GVG, there is no dispute that Massey is.  (*See* Docket Entry No. 74 at 11).  "If a debtor pays a third party whom it owes nothing and if the payment discharges a direct obligation of an insider, then the estate should recover it; this would cover direct and indirect payment to insiders or 'to or for the benefit of' insiders, as the statute says it. The key to a payment for the benefit of an insider is the absence of a direct obligation of the debtor." *Houston Heavy Equip. Co., Inc. v. Gould*, 198 B.R. 693, 695 (S.D. Tex. 1996).  As

17

discussed above, GVG was not the obligor of the Note. GVG's payment to Smith of the Note reduced Massey's indebtedness. Smith and KC Crushed's motion for summary judgment on Williams' § 548 claims is granted to the extent that Williams seeks to rely on Smith and KC Crushed's status as insiders as to GVG. Their motion is denied to the extent that Williams may rely on Massey's status as an insider to recover against Smith and KC Crushed.

### 2.     11 U.S.C. § 547

Smith and KC move for summary judgment dismissing Williams's § 547 claims. (Docket Entry No. 74 at 12). "Because Trustee cannot prove that the transactions were not at arm's length and that there was a close 'controlling' relationship, Smith and KC Crushed cannot be insiders." (*Id.*). But the statute allows recovery against noninsider creditors. *See* 11 U.S.C. § 547(b)(4)(A). Smith and KC Crushed's motion for summary judgment on Williams's § 547 claims is granted to the extent it relies on Smith and KC Crushed's status as insiders. The motion is denied to the extent that Williams pursues § 547 theories that do not rely on their insider status.

### C.     The $396,527.10 Transfer to KC Crushed

Smith and KC Crushed move for summary judgment on Williams's claims to avoid and recover the $396,527.10 transferred to KC Crushed in 2004. (Docket Entry No. 74 at 12). Smith and KC Crushed argue that some of the claims are time-barred and are otherwise unsupported by the record, and that they have an affirmative defense. (*Id*). Williams responds that limitations has not run and that there is sufficient evidence to support the affirmative defense. (Docket Entry No. 110 at 6-13). Williams seeks recovery under 11 U.S.C. § 548 and Tex. Bus. & Com. Code §§ 24.005, 24.006. (Docket Entry No. 17 ¶¶ 259-275).

### 1.     Limitations

18

Williams's § 548 claims are time-barred because the $396,527.10 transfer occurred in 2004, five years before the bankruptcy filing.  The statute has a reach-back period of two years.  *See* 11 U.S.C. § 548(a)(1).  Williams has not explained why this period does not apply.  Their motion for summary judgment dismissing this claim is granted.

Smith and KC Crushed argue that Williams's § 25.005(a)(2) claim is also time-barred.  Tex. Bus. & Com. Code § 24.010 provides the limitations period:

> (a) . . . a cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:
> (1) under Section 24.005(a)(1) of this code, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;
> (2) under Section 24.005(a)(2) or 24.006(a) of this code, within four years after the transfer was made or the obligation was incurred; or
> (3) under Section 24.006(b) of this code, within one year after the transfer was made.

The transfers at issue occurred more than five years before the bankruptcy petition filing date.  Williams's claims against Smith and KC Crushed for the $396.257.10 under §§ 24.005(a)(2) and 24.006 are time-barred.  Smith and KC Crushed's motion for summary judgment for those claims is granted.

### 2.    The Affirmative Defense to Tex. Bus. Com. Code § 24.005(a)(1)

Smith and KC Crushed assert that even if limitations has not run, they have an affirmative defense under Tex. Bus. & Com. Code § 24.009, which states that "[a] transfer or obligation is not voidable under Section 24.005(a)(1) of this code against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee."  (Docket Entry No. 74 at 17).  They argue that the  $396.527.10 transfer was payment for the contractor services GVG hired KC Crushed to provide.  (*See* Docket Entry No. 74-7 at 3).  Williams argues that GVG did not

receive reasonably equivalent value for these payments because OTWM—not GVG—owned the real property and OTWM received the benefit of the construction work.  (Docket Entry No. 110 at 10-11).  Williams neither cites record support nor explains why a lessee of real property, such as GVG, receives no benefit when it contracts to have improvements built on land it leased during the lease period.  (*See id.*)  There is no basis to find that, as a matter of law, GVG failed to receive reasonably equivalent value for the $396,527.10 transfer to KC Crushed.

"A transferee who takes property with knowledge of such facts as would excite the suspicions of a person of ordinary prudence and put him on inquiry of the fraudulent nature of an alleged transfer does not take the property in good faith." *Hahn v. Love*, 321 S.W.3d 517, 527 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)).  Smith and KC Crushed argue that there is no evidence that they had any reason to "question the legitimacy of the payment . . . [or believe that] GVG was insolvent or orchestrating some type of fraudulent act." (Docket Entry No. 74 at 17-18).  Williams has not responded to these arguments.  (*See* Docket Entry No. 110).  Aside from limitations, Smith and KC Crushed are entitled to the affirmative defense under Tex. Bus. & Com. Code § 24.009 for the $396.257.10 transfer.  Smith and KC Crushed's motion for summary judgment on Williams's related § 24.005(a)(1) claim is also granted.

### D.    The Claim for the $80,000 Transferred to Smith

Smith moves for summary judgment that the $80,000 GVG paid was not fraudulently transferred under 11 U.S.C. §§ 547 and 548 and TUFTA.  (Docket Entry No. 74 at 3).  As noted, Williams responded and cross-moved for partial summary judgment that the transfers were avoidable.  (*See* Docket Entry Nos. 82, 110).

### 1.    11 U.S.C. § 547

20

A trustee may recover a transfer that was made:

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made--

> (A) on or within 90 days before the date of the filing of the petition; or
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if--

> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and
> © such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).  Smith argues that he is not an insider and that GVG was solvent at the relevant times.  (Docket Entry No. 74 at 19-20).  Williams responds that Smith was an insider and that GVG owed him no debt and was insolvent.  (Docket Entry No. 110).  As discussed above, GVG was not the debtor to either Smith or KC Crushed on the Promissory Note.  The $80,000 payment was not "for or on account of an antecedent debt owed by the debtor before such transfer was made."  11 U.S.C. § 547(b)(2).  On the present record, Williams may not recover the $80,000 under a § 547 theory.  Summary judgment is granted dismissing Williams's § 547 claim for the $80,000.

### 2.     11 U.S.C. § 548 and TUFTA

Smith seeks summary judgment dismissing Williams's claim for the $80,000 in transfers "pursuant to § 548 and [T]UFTA."  (Docket Entry No. 74 at 25).  Smith argues that he received the $80,000 in exchange for reasonably equivalent value and in good faith.  (*See id.* at 23-25).  But, as noted, Smith did not receive reasonably equivalent value for the amount transferred because GVG did not owe him under the Note.

As to his good faith, Smith argues that "there is no evidence suggesting that Defendants had reason to question the legitimacy of the payments. The payments were made monthly, in the same amount of $5,000 . . . while KC Crushed continued to provide goods and services on an open credit basis for GVG." (*Id.* at 25). Smith states that during the relevant period, KC Crushed invoiced GVG for $5,000 per month, and those invoices were paid. (*Id.*). "A transferee who takes property with knowledge of such facts as would excite the suspicions of a person of ordinary prudence and put him on inquiry of the fraudulent nature of an alleged transfer does not take the property in good faith." *Hahn*, 321 S.W.3d at 527. Smith argues that he believed GVG was indebted to KC Crushed under the Note, despite the fact that the Note identified Massey as the borrower and Smith as the lender. (*See, e.g.*, Docket Entry No. 74 at 8). Whether or not his acceptance of the payments was made in subjective good faith, Smith may not claim the § 24.009 affirmative defense because it requires both reasonably equivalent value and good faith. The present record does not show reasonably equivalent value. Smith's motion for summary judgment dismissing Williams's claim to avoid the $80,000 in transfers under § 548 and TUFTA is denied.

**V.    Conclusion**

Williams's motion for summary judgment, (Docket Entry No. 82), is denied. Smith and KC Crushed's motion for summary judgment, (Docket Entry No. 74), is denied in part and granted in part. Williams's § 548 and §§ 24.005(a)(1), 24.005(a)(2) and 24.006 claims to avoid the $396,527.10 transfer, his § 547 claim to avoid the $80,000 transfer, and his claims that rely upon Smith and KC Crushed's insider status are dismissed. Williams's § 548 and §§ 24.005 and 24.006 claims to avoid the $80,000 transfer, to disallow proofs of claims 64-1 and 64-2, and the related claims for statutory damages and attorney's fees remain.

22

A status conference is set for **April 16, 2014** at 3:00 p.m. in Courtroom 11-B, United States Courthouse, 515 Rusk, Houston, Texas.

SIGNED on March 31, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge